IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Johnny G. Woods, Jr.,<br><br>  Plaintiff,<br><br>v.<br><br>Arizona Department of Public Safety, Unknown Halliday, Unknown Bugenig, Unknown Maksimuk,<br><br>  Defendants. | No. CV 13-00746-PHX-JJT (DMF)<br><br>**REPORT AND RECOMMENDATION** |

**TO THE HONORABLE JOHN J. TUCHI:**

Before the Court is Defendants Bugenig and Maksimuk's Motion for Summary Judgment (Doc. 74). This matter is before the undersigned on referral from the District Judge (Doc. 83). Because a magistrate judge cannot decide a "matter dispositive of a claim or defense or a prisoner petition challenging the conditions of confinement," Rule 72(b)(1), Federal Rules of Civil Procedure, the undersigned recommends as follows.

**I.   Background**

This case arises out of Plaintiff's arrest on June 18, 2012, following a traffic stop. (Doc. 1, Compl. ¶ 12.) Plaintiff alleges that Defendant Bugenig stopped his vehicle, requested his identification, and then Defendants Bugenig and Maksimuk pulled him out of his vehicle after he refused their request that he get out of the vehicle. (*Id.* at ¶¶ 12–13.) In his complaint, Plaintiff described his removal from the vehicle as follows:

> [T]hen out of no[where] BANG, BANG, BANG, BANG, THEN I SEEN SPARKS IN MY EYES blood running down my face then the door came open then officers pulling on my hair, arm tryin[g] to pull me out the truck then one of the police said his seat belt is on.
>
> [O]ne of the police undid my seat belt then they pulled me and beat me up. [O]fficer [B]ugenig, [M]aksimuk, [C]overt and Peterson, kicked me kneed me punched me in my back, shoulder, legs etc.

(*Id.* at ¶¶ 14–15.)[1]

Plaintiff alleges that he was unlawfully stopped, that the officers who carried out the traffic stop assaulted him before improperly arresting him, and that the vehicle he was driving was improperly towed. (*Id.* at ¶¶ 12-17, 54.) The Court previously dismissed all claims against Defendants Robert Halliday and the Arizona Department of Public Safety ("DPS"), which eliminated Count Two in its entirety as well as other claims as they pertained to Defendants Halliday and DPS. (Doc. 20 at 2–3.)

Regarding Defendants Bugenig and Maksimuk ("Defendant Officers"), Plaintiff alleges in Count One, that the Defendant Officers violated his constitutional rights by subjecting him to an illegal stop, search, and seizure. (*Id.* at ¶ 34.) Count Three alleges that the Defendant Officers used excessive force when ordering him out of the vehicle and arresting him, Count Four alleges that the Defendant Officers falsely arrested Plaintiff, and Count Five alleges that the Defendant Officers violated Plaintiff's due process rights by towing his vehicle and "[t]he killing of Patton." (*Id.* at ¶ 49, 52–54.)[2] The remaining Counts (Six through Eleven) assert claims against the Defendant Officers under Arizona law (Id. ¶¶ 56–84), which were dismissed by the Court on June 12, 2014 (Doc. 51 at 4–5). The Court also previously dismissed the portion of Count One relating to a search given that no search was alleged as well as the "Patton" allegation in Count Five. (*Id.*)

Plaintiff was convicted of resisting arrest in Maricopa County Superior Court on

---

[1] Officers Peterson and Covert were not named as defendants.

[2] It is unclear who Patton is.

- 2 -

April 8, 2014. (Doc. 75 at 2, ¶4.) Plaintiff brought the present lawsuit before being convicted. (Doc. 1.) On May 16, 2014, Defendants Bugenig and Maksimuk filed a motion to dismiss arguing that Plaintiff's constitutional claims (his claims under 42 U.S.C. §1983 in Counts One, Three, Four, and Five) are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because of Plaintiff's conviction. (Doc. 44.) The Court denied the motion, stating, "[a]s unlikely as it appears to the Court that Plaintiff will succeed, Defendants have not convinced the Court that Plaintiff failed to meet the minimal burden placed on him at this early stage to allege facts sufficient to make his claim plausible." (Doc. 51 at 5–6.)

Defendants' motion to dismiss filed on May 16, 2014 (Doc. 44) also argued that Plaintiff's claim for deprivation of property without due process of law (Count Five) fails because the only property he was possibly deprived of was the vehicle when it was towed. Defendants argued that A.R.S. § 28-3511 required the vehicle to be impounded by the Defendant Officers. The Court denied the requested dismissal of Count Five: "Defendants' argument that they were required to tow Plaintiff's vehicle because he had an invalid driver's license cannot succeed when the Complaint makes no mention of an invalid driver's license and Defendants have pointed to no evidence in the record that the Court could take judicial notice of that proves the fact." (Doc. 51 at 5.)

On July 10, 2015, remaining Defendants Bugenig and Maksimuk filed a motion for summary judgment (Doc. 74) supported by a statement of facts (Doc. 75) regarding the remaining claims in the case, which are Counts One (absent the unlawful search allegation), Three, Four, and Five (absent "the killing of Patton") of the Complaint against the Defendant Officers. Plaintiff responded (Doc. 80), supported by a statement of facts (Doc. 81), and the Defendant Officers have replied (Doc. 82). This motion is ripe for decision.

**II.     Standard for Granting or Denying a Motion for Summary Judgment**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Disputed facts which are not material will not defeat summary judgment. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). Substantive law determines which facts are material. *Id.* at 248.

The dispute must also be genuine. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 249. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50.

Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party opposing summary judgment may not rest upon the mere allegations or denials of the party's pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995).

All assertions of fact in support of or in opposition to a motion for summary judgment must be clearly stated and supported. Fed. R. Civ. P. 56(c). The Rules of Practice for the U.S. District Court, District of Arizona, provide a specific procedure for fulfilling the requirements of Fed. R. Civ. P. 56(c). LRCiv 56.1(b) requires that the party opposing a motion for summary judgment must file a Controverting Statement of Facts, which sets forth:

> (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the

moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support.

If a party fails to properly address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may "consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Here, Plaintiff violated LRCiv 56.1(b) in that he did not number any paragraphs in his statement of facts or correspond paragraphs with Defendants' numbered statement of facts; Defendants violated LRCiv 56.1(a) by putting too many statements of fact into several paragraphs (e.g., ¶¶6, 14) and including in their statement of facts "other undisputed facts (such as those providing background about the action or the parties)." *See also infra* note 4. Despite Plaintiff's non-compliance with LRCiv 56.1(b), where Plaintiff has controverted a statement of fact by Defendants in his response filings (Docs. 80, 81) and supports such with admissible evidence, the Court will consider the statement of fact disputed by Plaintiff.[3] Further, Fed. R. Civ. P. 56(c)(3) provides that "[t]he court need consider only the cited materials, but it may consider other materials in the record." Where indicated below, the Court will consider relevant, admissible materials that the parties have made part of the record as exhibits to their statements of facts.

**III.   Facts for Purposes of this Motion**

The below facts are either undisputed, or, where indicated, disputed and viewed in light most favorable to Plaintiff, the non-moving party.

**Events leading to the traffic stop**

On the day of Plaintiff Woods' arrest, Defendant Bugenig pulled Plaintiff over approaching the 202 freeway and Santan because the vehicle being driven by Plaintiff displayed an expired temporary registration plate in the rear of the vehicle. (Doc. 75 at 2, ¶ 9.) Plaintiff admits that he was driving a vehicle with an expired temporary registration

---

[3] Plaintiff filed a sworn and notarized affidavit regarding Docs. 80 and 81. (Doc. 81 at 9.)

- 5 -

at its rear, and Plaintiff admits that Defendant Bugenig pulled over the vehicle for this reason. (Doc. 81 at 2.)

### Interactions between Plaintiff and Defendant Bugenig before backup arrived

Defendant Bugenig communicated with Plaintiff through the closed passenger window to obtain Plaintiff's license and insurance. (*Id.*) Plaintiff states that he and Officer Bugenig "argued concerning constitutional rights." (Doc. 80 at 3.) Plaintiff further describes the communications as follows: "Plaintiff was upset about being pulled over, but gave Officer Bugenig the information he asked for." (Doc. 81 at 2.) Plaintiff's exhibits to his statement of facts include Defendant Bugenig's testimony from Plaintiff's criminal trial which estimates that he and Plaintiff had communicated for "likely a minute or so" before Defendant Bugenig went back to his patrol vehicle during the stop. (*Id.* at 12.) When Defendant Bugening returned to his patrol vehicle, he called for backup; he did so before running Plaintiff's driver's license information. (*Id.* at 2.) Defendant Bugenig further testified that he "called for backup because of [Plaintiff's] demeanor. It was clear he wasn't going to cooperate . . . ." (*Id.* at 13.)

### Plaintiff's driving privileges were suspended at the time of the stop

When Defendant Bugenig ran a records check on Plaintiff's driver's license after calling for backup and before arresting Plaintiff, he learned that Plaintiff's license was suspended. (Doc. 75 at 4 ¶10.)[4] Plaintiff expressly admits this fact and submitted Defendant Bugenig's trial testimony which reflects that Plaintiff's driving privileges were suspended when Defendant Bugenig ran Plaintiff's information through the MVD database. (Doc. 81 at 2, 13.) Further, "[w]hen backup arrived [including Officer Maksimuk], . . . Officer Bugenig told them that he was going to arrest Plaintiff for the misdemeanor charges." (*Id.*)

---

[4] Defendants' statement of facts (Doc. 75) in several places, such as here, lacks sufficient reference to the record; for support for these facts, *see* Doc. 75 at 10.

- 6 -

**Plaintiff's refusal to exit vehicle**

There is no dispute that Defendant Bugenig told Plaintiff to exit the vehicle and Plaintiff did not comply. (Doc. 80 at 4.) According to Plaintiff's statement of facts, the following occurred after backup arrived:

> The officers then went to each door of Woods' truck. The case agent in charge (Officer Bugenig) and Officer Covert went to the passenger window – so Bugenig could talk to Woods. Officer Maksimuk and Officer Peterson went to the driver's side door. **Officer Bugenig asked Woods to step out of the vehicle** and Woods asked . . . "am I under arrest?" Officer Bugenig decided to lie to Woods by telling him "no" you're not under arrest . . . .

(Doc. 81 at 2–3) (emphasis added). Plaintiff also asserts in his statement of facts that Officer Maksimuk did not tell Plaintiff he was under arrest before breaking the vehicle window. (*Id.* at 4.) In contrast, Officer's Maksimuk's testimony at Plaintiff's trial was that he did tell Plaintiff that Plaintiff was under arrest before breaking the vehicle window. (*Id.* at 17–18.)

For purposes of this motion, this Court will take as true that Officer Bugenig told Plaintiff that he was not under arrest. Further, for purposes of this motion, the Court will accept as true Plaintiff's statement that at the time that Officer Bugenig told Plaintiff he was not under arrest, Officer Bugenig did not make any statement to Plaintiff that Plaintiff had the right to remain silent and that anything he said can and will be used against Plaintiff. (*Id.* at 3.) The Court will also accept as true for purposes of this motion that, as Plaintiff asserts, Defendant Maksimuk did not tell Plaintiff he was under arrest before Defendant Maksimuk broke the driver's window. (*Id.* at 4.) The Court is not accepting as true or correct, though, Plaintiff's implied legal conclusions that before the officers forcibly removed him from the vehicle, Plaintiff had the right to be informed that he was under arrest, that he had the right to remain silent, and that anything he said could and would be used against him.

It is undisputed that, before Defendant Maksimuk broke the driver's window, Plaintiff refused to get out of his vehicle when asked and told to do so several times by

the Defendant Officers. (Doc. 80 at 4; Doc. 75 at 17.) Plaintiff's statement of facts includes criminal trial testimony of Defendant Maksimuk: "I made the decision at a certain point that we were going to forcefully remove him from the vehicle, and that's when I asked Officer Covert to come to the driver side and to assist myself and Peterson to take him into custody." (Doc. 81 at 89.) Defendant Maksimuk testified that he made the decision "[b]ecause it had gone on – in my opinion, it already gone past the point where there was no dialog between them that was eliciting a response of the driver that the driver was going to get out of the vehicle." (*Id.*)

Plaintiff submits a portion of a police report by Defendant Bugenig which states that Plaintiff "kept both doors locked and refused to roll down his windows." (*Id.* at 49.) Defendants submit criminal trial testimony of Defendant Maksimuk regarding the door and window on the driver's side. Defendant Maksimuk was asked, "on that side was the window up?" (Doc. 75 at 20.) To which he answered, "Yes." (*Id.*)

During Plaintiff's criminal trial testimony, he was asked, "[a]nd you had to be forcibly removed from the truck. Isn't that fair to say? Yes or no." (Doc. 75 at 17). To which Plaintiff answered, "Yes." (*Id.*)

**Removal of Plaintiff from the vehicle**

Defendants assert that the passenger window was broken in order to open the vehicle and physically remove Plaintiff from the vehicle. (Doc. 75 at 3, ¶12.) Plaintiff correctly points out that the evidence undisputedly shows it was the driver's side window, not the passenger's, that was broken. (Doc. 81 at 4–5.) Further, Plaintiff states, "Officer Maksimuk made the decision to smash in the driver's side window, which was inches from Plaintiff's face." (*Id.* at 4.) Defendant Maksimuk used an impact weapon, an expandable baton, to do so. (Doc. 80 at 4.) Plaintiff states the baton hit him in the head on his left cheek (Doc. 81 at 5). Defendant Maksimuk is sure the baton did not hit Plaintiff in the head. (*Id.* at 67.)

In his response paperwork, Plaintiff describes what happened next:

> These three officers grabbed Plaintiff by his arm and hair (dreadlocks), and though [Plaintiff] Woods was seatbelted in, these (3) officers yanked

> Plaintiff out of the truck and slammed him face down into broken glass. All three D.P.S. Officers pinned Plaintiff to the ground with knees in his neck and back.  The fourth officer, Bugenig joined the other three officers and handcuffed him.

(Doc. 80 at 4–5.)  Plaintiff's account is that had his seatlbelt on when the officers were trying to pull him from the vehicle and, therefore, could not be immediately pulled out of the vehicle.  (Doc. 81 at 25.)

In contrast, Defendants presented the criminal trial testimony of Defendant Maksimuk that Plaintiff pulled away from Defendant Maksimuk as soon as the officer grabbed onto his arm.  (Doc. 75 at 22–23.)  Defendant Maksimuk further testified, "[h]e pulled out of my grasp both hands . . . he leaned towards the passenger side.  He struggled the whole time until I got him out of the vehicle."  (Doc. 75 at 23.)

> Q. So even when you had one hand on the top of his hair and one hand on his left arm and you were trying to pull him out, was he still trying to pull the other way?
>
> A. (By Maksimuk) Yes. Yes. He was not going to come out of the vehicle.

(Doc. 75 at 23.)

Regarding Plaintiff's resistance and use of force during the encounter with the officers and in support of his account of the events, Plaintiff attaches two DPS Use of Force Reporting Forms to his statement of facts, one apparently completed by Officer Peterson where the box of "non-responsive" is checked regarding Plaintiff's resistance and "none" is checked regarding Plaintiff's use of force (Doc. 81 at 32–33).  The Peterson form also has the boxes checked for control holds used and impact weapons displayed.  (Doc. 81 at 33.)  There are no instructions for this form in either party's motion papers, but Plaintiff attached one page of the DPS Use of Force Policy, discussed below (Doc. 81 at 76).  The second use of force form Plaintiff attached appears to be incomplete; the first page appears to have been filled out by Defendant Maksimuk.  (Doc. 81 at 34.)  As Plaintiff points out, the "non-responsive" and "passive physical" boxes are checked.  (*Id.*)  Like the Peterson use of force form, "none" is checked regarding

Plaintiff's use of force. (*Id*. at 32–34) Neither "active physical" nor "aggressive physical" is checked on either form. (*Id*.)

### DPS policy regarding use of force

Plaintiff attached to his statement of facts what appears to be part of the DPS Use of Force Policy. (*Id*. at 76). Plaintiff has attached one page, which introduces the concept of a "Use of Force Matrix" that does not appear to be part of the page attached; the page also defines varying "Subject Resistance Levels." (*Id*.) Passive physical resistance is defined as follows:

> Slight potential for physical harm. A subject physically refuses to comply or respond to an officer's command. The subject does not take any action to physically defeat the actions of the officer but forces the officer to employ other alternative force actions.

(*Id*.) Active physical resistance is defined as follows:

> Slight to moderate potential for physical harm. A subject is aggressive or combative when the subject makes physically evasive movements to defeat an officer's attempt at control, being taken into or retained in custody, or an officer reasonably believes that approaching an aggressive or combative subject is unsafe or would escalate the incident. The subject's physical movements may include bracing or tensing, verbal resistance as in threatening the officer with physical harm, attempts to push/pull away, or not allowing the officer to get close to the subject.

(*Id*.)

Plaintiff asserts that part of the DPS Use of Force Policy provides that "Impact weapons strikes may be used when facing the active aggression level of resistance;" this portion of the policy is not provided in support of the factual assertion about the contents of the policy. (*Id*. at 7; Doc. 80 at 6.) Plaintiff also asserts that the DPS Use of Force Policy provides that "Passive resistance or resistance such as a prisoner's refusal to enter a police vehicle or housing room or to let go of a railing, is not sufficient in itself to justify the use of impact weapon strikes." (Doc. 80 at 6). Again, this portion of the actual policy is not provided. Defendants' expert report also references a DPS use of

1 force policy (Doc. 75 at 25, 34), but Defendants do not provide any of the actual policy in
2 support of their motion for summary judgment.

### Plaintiff's injuries following the encounter with Defendants

After Plaintiff was arrested, the officers called the fire department to render medical aid to Plaintiff. (*Id*. at 17.) On his request, Plaintiff was taken to Mercy Gilbert Hospital. (*Id*. at 17, 38–46). Defendant has submitted the emergency room records for this visit. (*Id*. at 38–46.)  Plaintiff's exhibit 10 is missing (Doc. 81 at 74), which appears to be intended to be records of Plaintiff's primary doctor documenting Plaintiff's sworn statement that Plaintiff's primary care doctor increased Plaintiff's medication from the injuries Plaintiff received from the events (Doc. 81 at 6). The Court accepts as true, for purposes of this motion, that Plaintiff's medications were increased by his primary doctor due to Plaintiff's injuries from the events at issue in this case. Further, the Court accepts as true for purposes of this motion Plaintiff's assertions about his injuries, which are consistent with the Mercy Gilbert Hospital Emergency records:  Plaintiff Woods "was treated for . . . a 0.5 cm. laceration to the left side of [his] face, left shoulder strain, lower back strain, and hip pain. The doctor gave Woods [pain medication] . . . Plaintiff also had his medication increased by his primary doctor." (*Id*. at 5–6.)  The Court rejects the Defendants' asserted fact that the only injury sustained by Plaintiff was the approximately .5 cm. cut on Plaintiff's face. (Doc. 75 at 3, ¶ 15.)

Plaintiff asserts that his facial laceration was caused by being hit with Defendant Maksimuk's baton when Defendant Maksimuk broke the driver's side window to remove Plaintiff from the vehicle. (Doc. 81 at 5.) Defendants assert that the .5 cm cut may have occurred due to Plaintiff being on the ground next to the vehicle and the broken glass from the window of the vehicle. (Doc. 75 at 3, ¶ 13.)   Defendant Maksimuk testified at Plaintiff's criminal trial that his baton did not cause the cut on Plaintiff's face. (Doc. 81 at 98.) The Court accepts as true that the facial laceration and the other injuries described above were sustained after Plaintiff refused to get out of the vehicle.

## IV. Anaylsis

### A. Traffic stop and arrest

Plaintiff claims in Count One that his Fourth Amendment rights were violated by the traffic stop and by his removal from the vehicle he had been driving. An officer may conduct a traffic stop if the officer has "probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996); *see also United States v. Fowlkes*, 804 F.3d 954, 971 (9th Cir. 2015) (traffic stop constitutional when the officer observed an expired temporary operating permit on the car). Arizona law requires that current registration be displayed for the vehicle Plaintiff was driving, A.R.S. § 28-2532. Arizona law allows that a "peace officer may stop and detain a person as is reasonably necessary to investigate an actual or suspected violation of any traffic law committed in the officer's presence." A.R.S. § 13-3883(B). It is undisputed that Defendant Bugenig stopped the vehicle Plaintiff was driving due to an expired temporary registration displayed at the rear of the vehicle. Defendant Bugenig had probable cause to believe that a traffic violation had occurred and therefore to effectuate the traffic stop of the vehicle Plaintiff was driving.

"[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977); *see also Newell v. Oro Valley*, 789 P.2d 394, 396 (Ariz. App. 1990). This is so because an officer's decision to order suspects from the vehicle "is a valid precautionary measure designed to afford a degree of protection to the investigating officer." *United States v. Taylor*, 857 F.2d 210, 214 (4th Cir. 1988); *see United States v. Flores*, 359 F. Supp. 2d 871, 876 (D. Ariz. 2005). Moreover, the "incremental intrusion" resulting from an officer's request that an individual exit the vehicle is de minimus when compared to the legitimate concerns about the officer's safety. *Mimms*, 434 U.S. at 108–111. Thus, as a matter of law applied to undisputed facts, Plaintiff's 42 U.S.C. §1983 claims based on the Fourth Amendment for the traffic

stop and orders to exit the vehicle fail.

Plaintiff also claims in Count One that his arrest violated his Fourth Amendment rights.  "A warrantless arrest of an individual in a public place for a crime committed in an officer's presence violates the Fourth Amendment if the arrest is not supported by probable cause."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 470–71 (9th Cir. 2007).  Count Four is a Section 1983 false arrest claim; to prevail on a false arrest or false imprisonment claim, a plaintiff must show that there was no probable cause for his arrest.  *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998).  The existence of probable cause to arrest or detain is an absolute defense to any claim under § 1983 against police officers for wrongful arrest or false imprisonment because the lack of probable cause is a necessary element of each.  *Lacy v. Cty. of Maricopa*, 631 F. Supp. 2d 1183, 1193 (D. Ariz. 2008).  Arizona law authorizes law enforcement officers to arrest a person without a warrant if an officer has probable cause to believe that a "misdemeanor has been committed in the officer's presence and probable cause to believe the person to be arrested has committed the offense."  A.R.S. § 13-3883(A)(2).

Probable cause exists when "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime."  *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986); *see also Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (examining "the events leading up to the arrest" and whether the "historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause").

It is undisputed that Defendant Bugenig saw Plaintiff driving a vehicle.  It is also undisputed that when Defendant Bugenig ran Plaintiff's license information through the MVD database, the result was that Plaintiff's driving privileges had been suspended.  Driving with a suspended license is a class 1 misdemeanor crime in Arizona, A.R.S. §28-3473.  The Defendant Officers had probable cause to arrest Plaintiff, and therefore, Plaintiff's claims against the Defendant Officers for wrongful arrest fail as a matter of law.  Alternatively, the Defendant Officers are entitled to qualified immunity for the arrest because a reasonable officer could properly but mistakenly believe that there was

- 13 -

1 probable cause for arresting Plaintiff for driving while privileges to drive are suspended. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

For the reasons above, the Court recommends that Defendant Officers be granted summary judgment on Count One and Count Four of the Complaint.

### B.     Use of force

In Count Three, Plaintiff alleges that the Defendant Officers used excessive force in ordering him out of the vehicle and in arresting him.  The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them.  *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985).  In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that *Tennessee v. Garner's* Fourth Amendment objective reasonableness standard applies to any force by a law enforcement officer during an arrest, investigatory stop, or other seizure.  Considerations in applying the *Garner* objective reasonableness standard to uses of force include "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* at 396.  These factors are not intended to be exclusive in determining objective reasonableness.  *See George v. Morris*, 736 F.3d 829, 839 (9th Cir. 2013) (that officers were responding to a domestic violence call is a factor to be considered).

"Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."  *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (citations omitted).   In this case before the Court, there are issues of fact which preclude determining on summary judgment the reasonableness of the Defendant Officers' use of force.

In their summary judgment argument regarding the excessive force claim, Defendants rely primarily on the opinion of an expert that the force used was reasonable

- 14 -

under the circumstances presented. (Doc. 75 at 24–37.) Defendants' reliance on an expert's report for its summary judgment motion is misplaced. *See Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002). The expert report and opinion regarding the reasonableness of the Defendant Officers' use of force relies on facts that this Court cannot consider for this motion from the materials presented in support for summary judgment. For example, the expert report states, among numerous other conclusions of fact, that Plaintiff was using profanity toward Defendant Bugenig, that the Plaintiff had the vehicle engine running after stopped, and that the interior of the vehicle was cluttered with multiple items making Defendant Bugenig unsure if there were any weapons inside (Doc. 75 at 27). Importantly, the expert report's description of what occurred includes that Plaintiff "resisted getting out of the car by pulling his arm and body away from Officer Maksimuk's grip." In contrast, Plaintiff's account in his summary judgment opposition papers is that he was seatbelted into the vehicle when the window was broken by Defendant Maksimuk. Plaintiff's account is that he could not exit the vehicle once the officers were trying to pull him from the vehicle because of being seatbelted into the vehicle.[5] Plaintiff has also raised a disputed material fact as to whether he was hit in the head by Defendant Maksimuk's baton.

The Defendants' expert relied on materials not before this Court in reaching the opinions which the Defendants ask this Court to adopt in deciding this case as a matter of law, including the complete or majority of the transcript of Plaintiff's criminal trial (Doc. 75 at 25, 31, 34). In order to evaluate the reasonableness of the Defendant Officers' conduct, Plaintiff's resistance, both type(s) and degree, need to be considered. The Court declines to adopt the expert's opinions, particularly given that Plaintiff's account of his resistance (and lack thereof) differs in material respects to the facts that the Defendants' expert relied upon, and given that Defendant Maksumik's use of force form (Doc. 81 at 34) seems to contradict his testimony at Plaintiff's criminal trial about Plaintiff's level of

---

[5] The Defendants did not assert all of the facts relied upon by their expert, or even a majority of them, in their statement of facts in support of summary judgment. Thus, Plaintiff could not have been expected to respond to each of the facts relied upon by the Defendants' expert in his report attached to the statement of facts.

- 15 -

resistance (Doc. 75 at 22–23).

Further, the defense expert also appeared to rely upon or at least consider DPS Use of Force Policy which Defendants have not presented to this Court other than partially and in the body of the expert report.  Plaintiff also has not presented the entire policy to the Court, but has attached a portion as well as an argument supported by his account that the policy was not followed by the Defendant Officers.  Compliance (or lack thereof) with the DPS Use of Force Policy will not be dispositive on the issue of the reasonableness of the force by the Defendant Officers, but the parties seem to agree it is a factor to be considered.  "Although such training materials are not dispositive, we may certainly consider a police department's own guidelines when evaluating whether a particular use of force is constitutionally unreasonable." *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir. 2003).   The Court cannot adequately examine the policy factor on the record presented for the pending motion.

Whether the vehicle was running or not, whether there was clutter in the vehicle which could have concealed a weapon, whether Plaintiff was seatbelted, whether Plaintiff pulled away from the officer trying to remove him from the vehicle, whether the DPS Use of Force Policy was violated or followed, and other undeveloped facts on this summary judgment record (facts which may not have been relevant to and admissible in Plaintiff's criminal trial) as well as whether or not Plaintiff was hit in the head by Defendant Maksimuk's baton are factors that should be weighed in determining whether or not the Defendant Officers used only objectively reasonable force given all of the circumstances.  Given the record before the Court, including disputed material facts, the Court cannot rule on summary judgment that the Defendant Officers' use of force was constitutionally reasonable.  For similar reasons, Defendants' argument for summary judgment based on qualified immunity fails. *See Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part*, *Pearson v. Callahan*, 555 U.S. 223 (2009).  The Court recommends that Defendants' motion for summary judgment regarding use of excessive force, Count Three, be denied.

### C. Towing/impounding of the vehicle

Plaintiff alleges in Count Five that the Defendant Officers violated his due process constitutional rights by "unlawfully towing of the plaintiff's vehicle interrupting the plaintiff's freedom of movement causing serious financial difficulties for me the plaintiff." (Doc. 1 at 11, ¶ 54).

Defendants cite A.R.S. § 28-3511 in support of their argument that summary judgment is appropriate regarding the count pertaining to the towing of the vehicle, Count Five. A.R.S. § 28-3511(A)(1)(a) states in pertinent part that a "peace officer shall cause the removal and either immobilization or impoundment of a vehicle if the peace officer determines that: 1. A person is driving the vehicle while . . . the person's driving privilege is suspended or revoked for any reason." Arizona law provides procedural protections regarding impounded vehicles under A.R.S. § 28-3511; the procedural protections are found at A.R.S. § 28-3514.

A "procedural due process claim hinges on proof of two elements: (1) a protect[ed] liberty or property interest . . . ; and (2) a denial of adequate procedural protections." *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998). Putting aside the first element, Plaintiff has not met even his initial burden on the second element. Plaintiff does not cite any law supporting his position that the impoundment was in any way unlawful. Plaintiff does not even refer to the procedural protections found at A.R.S. § 28-3514, let alone assert how or why he claims that the process and safeguards found at A.R.S. § 28-3514 are constitutionally defective. The Court finds that Plaintiff's constitutional rights were not violated by the impounding of the vehicle.

Alternatively, the Defendant Officers are entitled to qualified immunity regarding the towing of the vehicle. Defendants assert that Plaintiff admits his driver's license was suspended at the time he was stopped by Defendant Bugenig. (Doc. 75 at 4, ¶ 18.) While the deposition testimony of Plaintiff appears to admit such, more important is the information that the officer had at the time of the stop. When Defendant Bugenig ran a records check on Plaintiff's driver's license at the time of the stop, he learned that Plaintiff's license was suspended. (Doc. 75 at 4, ¶ 10.) Plaintiff has not controverted this

fact nor has Plaintiff submitted admissible evidence controverting this fact.

This Court has already found that the Defendant Officers had probable cause to arrest Plaintiff for the misdemeanor of driving while privileges to drive are suspended. *See supra* pp. 12–14. This Court also has already found that the Defendant Officers are entitled to qualified immunity for the arrest because a reasonable officer could properly but mistakenly believe that there was probable cause for arresting Plaintiff for driving while privileges to drive are suspended. *See supra* p. 14. The Defendant Officers were following Arizona law when they impounded the vehicle Plaintiff had been driving with what objectively and reasonably appears to be with Plaintiff's driving privileges suspended. A reasonable police officer could properly but mistakenly believe that having the vehicle towed would not violate a clearly established constitutional right. *See Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 986 (9th Cir. 1998).

Thus, this Court recommends that Defendants Bugenig and Maksimuk be granted summary judgment on Count Five of the Complaint as a matter of law based on the undisputed material facts underlying their summary judgment motion.

For the foregoing reasons,

**IT IS RECOMMENDED that** Defendants Bugenig and Maksimuk's Motion for Summary Judgment (Doc. 74) be **granted in part** and **denied in part**. It is recommended that summary judgment be granted for the Defendant Officers regarding Counts One, Four, and Five. It is further recommended that summary judgment be denied for Count Three, Plaintiff's claim under 42 U.S.C. § 1983 that the Defendant Officers violated his constitutional rights by using excessive force removing him from the vehicle and arresting him.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within

which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendations of the Magistrate Judge.

Dated this 4th day of January, 2016.

Honorable Deborah M. Fine
United States Magistrate Judge