**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Johnny G. Woods, Jr.,<br><br>          Plaintiff,<br><br>v.<br><br>Arizona Department of Public Safety, *et al.*,<br><br>          Defendants. | No. CV-13-00746-PHX-JJT<br><br>**ORDER** |

      At issue is the Report and Recommendation ("R&R") (Doc. 85) submitted by United States Magistrate Judge Fine recommending that the Court grant summary judgment for Defendants as to all but one of the remaining claims in Plaintiff's Complaint. Defendants timely filed an Objection to Judge Fine's recommendation that one claim should survive summary judgment (Doc. 86). Plaintiff timely filed a Response to Defendants' Objection (Doc. 88). For the reasons set forth below, the Court will grant Defendants' Motion for Summary Judgment (Doc. 74).

      The R&R recommends entry of summary judgment for Defendants on Plaintiff's claim of unlawful seizure in Count One; his claim for false arrest in Count Four; and his claim for unlawful seizure of his vehicle in Count Five.[1] Plaintiff did not file any objections, timely or otherwise, to these recommendations, and in fact, in his Response to Defendants' Objection, states that he "hereby AGREE[s] with the Report and Recommendation issued January 4, 2016, by Magistrate Judge." (Doc. 88 at 1.) Although

---

[1] The Court previously dismissed Counts Two and Six through Eleven.

by virtue of Plaintiff's agreement with the Judge Fine's recommendations concerning Counts One, Four and Five, the Court need not review those recommendations, it nonetheless has conducted such a review and concludes that the R&R is correct regarding those counts. The Court therefore will grant summary judgment on Counts One, Four and Five of the Complaint.

The R&R also recommends denial of summary judgment on Plaintiff's excessive force claim in Count Three of the Complaint. The Court will reject that recommendation and will grant Defendants' Motion for Summary Judgment as to Count Three for the reasons set forth below. In so doing, the Court also adopts in whole sections I (Background), II (Standard for Granting or Denying a Motion for Summary Judgment), III (Facts for Purposes of this Motion), IV.A (Analysis – Traffic Stop and Arrest) and IV.C (Analysis – Towing/impounding of the Vehicle) of the R&R. The Court therefore will not repeat here in detail the information contained in these sections of the R&R.

## I.     Excessive Force Claim

Having already determined as a matter of law that Defendant Bugenig had lawful cause to stop Plaintiff's vehicle, and thereafter to place him under arrest, the Court must limit its focus, for purposes of analyzing the propriety of summary judgment on the excessive force claim, to the actions Defendants took in effecting that arrest. Plaintiff charges that Defendants used excessive force in the three following actions: 1) using a police baton strike to shatter Plaintiff's driver-side car window, which baton he alleges also struck him in the cheek and caused a half-centimeter cut; 2) once the driver door was opened, grabbing Plaintiff by his arm and hair, pulling him out of the car and throwing him to the ground face-down, where there was broken glass; and 3) thereafter pinning Plaintiff to the ground with knees to his neck and back. The parties are in agreement that Action 2 occurred as described above, and are in at least partial agreement that Actions 1 and 3 occurred as described above.[2] To the extent the parties disagree, and for purposes

---

[2] Regarding Action 1, the parties agree that Defendant Maksimuk used his police baton to shatter the driver-side window, but Defendants dispute that the baton ever contacted Plaintiff's cheek or any other part of him. As to Action 3, the parties agree that

- 2 -

of this Motion only, the Court views the facts in the light most favorable to the nonmoving party – here, Plaintiff – and construes the facts as listed above.[3]

### A. Action 1 – Shattering the Driver Window and Striking Plaintiff's Cheek with the Baton

The Court concludes it is necessary to evaluate Defendants' alleged actions in gaining entry to Plaintiff's car separately from their alleged actions after gaining entry. Interpreted in the light most favorable to Plaintiff, the facts that this Court must first evaluate are that Defendant Maksimuk, through strikes with his police baton, shattered the driver side window of Plaintiff's car, and in doing so, struck Plaintiff once in the cheek with the baton. The Court agrees with Magistrate Judge Fine's conclusion that, in light of the record before the Court, it cannot rule on summary judgment that this use of force as alleged was constitutionally reasonable. However, the R&R does not provide any analysis for its recommendation that summary judgment based on qualified immunity should be denied for the baton strike. The Court undertakes that analysis below.

Government officials performing discretionary functions are entitled to qualified immunity, which would shield them from civil damages liability where their actions "could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The doctrine's purpose is to balance two important but competing interests – "the need to hold public officials

---

Defendants pinned Plaintiff to the ground by applying a knee or knees to his back, but Defendants dispute that they applied any knees to his neck.

[3] Plaintiff originally alleged in his Complaint that when taken to the ground, he was punched, kicked and kneed in his back, shoulder and legs by Defendants. (Doc. 1, ¶ 15.) But Defendants introduced with their Motion for Summary Judgment multiple statements and other evidence that while they applied a knee or knees to his upper back, there was no punching or kicking, and no force directly applied to Plaintiff's legs. In his Response and Statement of Controverting Facts supporting it, Plaintiff has refined his claims only to offer statements of fact supporting the allegation that Defendants "pinned Plaintiff to the ground with knees in his neck and back." (Doc. 80 at 5.) In support of this statement, Plaintiff offered several exhibits supporting only the claim that he was kneed in the back or shoulder area, and no evidence that he was punched or kicked, or otherwise contacted in the legs. The Court concludes that Plaintiff has abandoned his broader claim that Defendants punched and kicked him, but to the extent he has not abandoned it, he has failed to offer facts controverting Defendant's factual statements indicating no punches or kicks occurred, and therefore this portion of his excessive force claim is appropriate for summary judgment.

accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity protects government officials from liability for civil damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 134 S. Ct. 2056, 2066-67 (2014) (quoting *Ashcroft v. al–Kidd*, 131 S. Ct. 2074, 2080 (2011)). Even if the violated right was clearly established at the time of the violation, it may be "difficult for [the defendant] to determine how the relevant legal doctrine . . . will apply to the factual situation the [defendant] confronts. . . . [Therefore, i]f the [defendant's] mistake as to what the law requires is reasonable . . . the [defendant] is entitled to the immunity defense." *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *overruled in part on other grounds*, *Pearson*, 555 U.S. at 236.

A government official "cannot be expected to predict the future course of constitutional law, but [the official] will not be shielded from liability" for acts that violate clearly established constitutional rights. *Procunier v. Navarette*, 434 U.S. 555, 562 (1978) (citations omitted). This inquiry must be "undertaken in light of the specific context of the case." *Saucier*, 533 U.S. at 201. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right." *Anderson*, 483 U.S. at 640. To conclude that the right is clearly established, the court need not identify an identical prior action. *See id.*; *Rodis v. City & Cnty. of San Francisco*, 558 F.3d 964, 969 (9th Cir. 2009). First, the court should look to binding precedent. *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013). Absent binding precedent, the court should consider all relevant precedents, including decisions from the Supreme Court, all federal circuits, federal district courts, and state courts; in addition, the court should consider the likelihood that the Supreme Court or the Ninth Circuit would decide the issue in favor of the person asserting the right. *See Elder v. Holloway*, 510 U.S. 510, 512, 516 (1994).

*Saucier* provides that prior law clearly establishes a right when the facts of the precedential case are "not distinguishable in a fair way from facts presented in the case at hand." 533 U.S. at 202. But even where a plaintiff has alleged violations of a clearly established right, the government official is still entitled to qualified immunity if he or she made a reasonable mistake as to what the law requires. *See id.* at 205. Put another way, the test is whether the officer had "fair warning" that his actions were impermissible. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation; if the plaintiff meets this burden, then the defendant bears the burden of establishing that the defendant reasonably believed the alleged conduct was lawful. *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

The closest precedent the Court could locate to the circumstances presented here is *Young v. County of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011). In *Young*, the plaintiff was stopped for a traffic violation. *Id.* at 1159. He refused to follow the defendant police officer's directive to return to his vehicle but offered no physical resistance, and the court found he did not pose a physical threat to the defendant. *Id.* Nonetheless, the defendant pepper sprayed the plaintiff and allegedly struck him with a police baton at least ten times, including at least once after the plaintiff had lain down on the ground. *Id.* at 1160. In concluding that the defendant had violated the plaintiff's constitutional rights through the use of excessive force, the court in *Young* found first that both the pepper spray and the baton blows "are regarded as 'intermediate force' that, while less severe than deadly force, nonetheless present a significant intrusion upon an individual's liberty interests." *Id.* at 1161. The court also found that, based on the application of pepper spray and the multiple strikes with the baton, the amount of force used in the case was significant as well, and that the type and amount of force used must be justified by a "commensurately serious state interest." *Id.* at 1162-63. The court in *Young* concluded that the state interest was not commensurately serious, observing, among other factors, that the plaintiff, when sprayed and struck by the baton, did not pose an immediate threat to the safety of the

- 5 -

1   officer or others, and that he was not actively resisting arrest or attempting to evade arrest
2   by flight. *Id*. at 1163. In balancing the governmental interest presented against the nature
3   of intrusion against the plaintiff, the court in *Young* concluded that the force used by
4   defendant was excessive and in violation of the Fourth Amendment. *Id.* at 1166.

5   The present case is distinguishable from *Young* in that here, there was no pepper
6   spray deployed, and rather than multiple baton blows intentionally inflicted, including
7   one after the plaintiff in *Young* had lain down in compliance with the officer's directive,
8   there was only one baton blow. Importantly, that blow was intended to shatter the car
9   window and effect entry to Plaintiff's locked car, and Plaintiff neither alleges nor
10  otherwise argues that it was intended for his head or any other part of him. Rather, as
11  Plaintiff offers in his exhibits underlying his controverting statements of fact, Defendant
12  Maksimuk delivered two baton blows to shatter the car window; the first did not succeed.
13  When the second one did, he stopped striking and cleared the glass. (Doc. 81 at 48.)

14  In light of these significant factual distinctions, and the absence of any other
15  controlling case law more on point, it cannot be said that Plaintiff's right to be free from a
16  single baton strike, delivered to shatter his window and gain entry to his car and effect a
17  lawful arrest, was a clearly established right. And if such was a clearly established right,
18  the factual differences between the precedent provided in *Young* and the instant case
19  would make it very "difficult for [Defendant] to determine how the relevant legal
20  doctrine [] will apply to the factual situation [he] confront[ed]." *See Saucier*, 533 U.S. at
21  205. Thus, Defendant Maksimuk's decision to swing the baton to gain entry to the car
22  where that strike might also hit Plaintiff, even if he was mistaken as to its
23  constitutionality, was a reasonable mistake.[4] Defendants are entitled to qualified
24  immunity for the baton strike that allegedly hit Plaintiff in the cheek.

---

26  [4] The Court must answer a preliminary question before it delves into the specific
    situation where Plaintiff might be harmed by a baton strike intended to shatter a window.
27  The question is whether Defendant Maksimuk had a right to break Plaintiff's car window
    to gain access to Plaintiff in the first place. The question is easily answered, however. A
28  police officer is entitled to use reasonable and necessary force to affect an arrest. *See
    Graham v. Connor*, 490 U.S. 386, 395-96 (1989). When police officers have probable
    cause to arrest an individual, and that individual has sought to avoid them by locking

- 6 -

### B.     Actions 2 and 3 – Pulling Plaintiff from the Car, Throwing Him to the Ground and Pinning Him with Knees to His Neck and Back

The Court evaluates Plaintiff's allegations that, once Defendant opened Plaintiff's car door, they pulled him from his car by his arm and hair, threw him to the ground and pinned him with their knees differently than his allegation of the baton strike. This is because Plaintiff's allegations of what Defendants did after they gained entry to his car involve the added ingredient of Plaintiff's resisting arrest.

The R&R concluded that the issue of "whether Plaintiff pulled away from the officer trying to remove him from the vehicle" was an undeveloped fact, upon which the Court could not base a ruling for summary judgment that the Defendants' use of force was constitutionally reasonable. (Doc. 85 at 16.) This is incorrect. First, the record contains the fact that as a result of his altercation with Defendants, Plaintiff was prosecuted and convicted in Maricopa County Superior Court for resisting arrest. (Doc. 75 at 2 ¶ 4; Doc. 44 at 2.)[5] As Defendants point out, in convicting Plaintiff of that charge, the jury necessarily found that Plaintiff: 1) intentionally prevented, or attempted

---

himself inside a car, refusing a lawful order to come out, and showing at least verbal hostility, the officers are entitled to use reasonable force to gain entry to the car for the purposes of making the arrest. *See, e.g.*, *Eldridge v. City of Warren,* 533 F. App'x 529, 535 (6th Cir. 2013); *Vargo v. City of Cleveland, Tenn.*, No. 1:12-CV-248, 2014 WL 1745649, at *2 n.2 (E.D. Tenn. May 1, 2014). The Court is aware of the Ninth Circuit's holding in *Coles v. Eagle* that summary judgment was inappropriate where officers had broken the driver-side window on the plaintiff's car and dragged him through it, kicking him in the torso as they did so. 704 F.3d 624, 630 (9th Cir. 2012). But the court in *Coles* did not hold that the defendant officers' conduct was clearly a violation of plaintiff's Constitutional rights. It only concluded that under the circumstances of that case a question of fact required the jury's determination and summary judgment was inappropriate. *Id.* Moreover, the court in *Coles* considered not just the breaking of a window to affect the arrest. Rather, it considered the officers' combined conduct in breaking the window, dragging plaintiff through it and kicking him as they did so as a monolithic act. *Coles* is therefore not particularly instructive to the instant case. The opinion in *Coles* also post-dates the events of this case by six months, and was therefore unavailable as precedent to give Defendants "fair warning" for purposes of the qualified immunity analysis.

[5] In deciding a motion for summary judgment, the Court need consider only the cited materials, but it may also consider other materials in the record. Fed. R. Civ. P. 5(c)(3). Additionally, the Court takes judicial notice, pursuant to Rule 201, Fed. R. Evid., of the Arizona state court record of Plaintiff's judgment and conviction in *Arizona v. John Gene Woods*, CR 2012-132521-002. *See Kasey v. Molybdenum Corp. of Am.*, 336 F.2d 560, 563 (9th Cir. 1964).

to prevent, Defendants from making the arrest; and 2) the means Plaintiff used to prevent the arrest involved either the use of, or threat to use, physical force or any other substantial risk of physical injury to either an officer or someone else. A.R.S. § 13-2508(A).

Moreover, in support of their Motion for Summary Judgment, Defendants introduced Officer Maksimuk's testimony from that trial that when he reached into the car to grab Plaintiff, Plaintiff immediately "yanked" his arm out of Maksimuk's grasp. (Doc. 75 at 21-22.) Plaintiff produced no controverting statement of fact that he never yanked or pulled his arm away from the arresting officers. His statement that, "of course, the distinction between struggling and simply moving away to avoid excess force is a question of fact to be determined by the jury" is not a controverting statement of fact. Plaintiff does not deny that he attempted to escape Defendants' grasp, and the jury's verdict in his criminal trial is conclusive on this point in any event. The Court thus takes as unchallenged that Plaintiff used and/or threatened physical force in attempting to prevent Defendants from arresting him, including yanking his arm out of Defendant Maksimuk's grasp, in evaluating the constitutionality of Defendants' actions after they gained access to Plaintiff in his car.

An arresting officer's use of a control hold on an arrestee in order to place him in handcuffs is objectively reasonable, and thus will not support an excessive force claim, when the officer had probable cause to arrest, the arrestee was behaving erratically, and the arrestee attempted to physically resist arrest. *Tatum v. City and Cnty. of San Francisco*, 441 F.3d 1090 (9th Cir. 2006). Moreover, a police officer does not use excessive force in addressing violations of a city ordinance by grabbing a subject's arm and using the officer's body weight to push that subject "violently" to the ground. *Liiv v. City of Coeur D'Alene*, 130 F. App'x 848 (9th Cir. 2005); *see also Allen v. United States*, 964 F. Supp. 2d 1239 (D. Nev. 2013) (officer's actions in arresting a suspected tax evader, including pushing her up against a wall to gain control over her, which resulted in

a scratch on her shoulder and an abrasion on her chin, were reasonable, as the suspect physically struggled with the officers, attempting to break free).

The Court thus has before it the above case law and the fact that Plaintiff used or threatened force in resisting arrest, which caused Defendants some reasonable concern for their own safety. In light of the facts and case law, the Court finds that Defendants' actions in pulling Plaintiff from the car, throwing him to the ground, and applying a knee or knees to his back and or neck to regain control of him during a lawful arrest, where there is no evidence or allegation of any obstruction of Plaintiff's airway or any neck or spinal injury, did not constitute excessive force or violate Plaintiff's constitutional rights under the Fourth Amendment. Even if such actions were to comprise a constitutional violation, the Court again would find that the instruction provided in *Tatum* and *Liiv* would lead Defendants to reasonably understand that their actions after Plaintiff resisted them would be permissible under the Fourth Amendment. The Court thus concludes that Defendants are entitled to summary judgment on Plaintiff's excessive force claims for their actions after gaining entry to his car, as well as before.

In sum, the Court will grant summary judgment for Defendants on Plaintiff's claims in Counts One, Four, and Five. The Court will also grant summary judgment for Defendants on Plaintiff's claim in Count Three addressing Defendants' actions in using baton strikes to gain entrance to Plaintiff's car on the basis of qualified immunity. Lastly, the Court will grant summary judgment for Defendants on Plaintiff's remaining claims in Count Three addressing Defendants' actions in removing him from the car, taking him to the ground, and subduing him with knees placed to the back and/or neck, both because such actions did not violate a constitutional right and because qualified immunity applies to their actions.

**IT IS ORDERED** adopting into this Order Sections I through III, IV.A and IV.C of the Report and Recommendation (Doc. 85).

**IT IS FURTHER ORDERED** granting Defendants' Motion for Summary Judgment (Doc. 74) on all remaining claims in the Complaint, for the reasons set forth in detail above.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 11th day of February, 2016.

*[signature]*

Honorable John J. Tuchi
United States District Judge